Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ELETTRA MEEKS, JOSEPH DELACRUZ, STEPHANIE LAGUNA, AMBER LEONARD, and BECKY WITT, *on behalf of themselves and others similarly situated*,<br><br>          Plaintiffs,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; MIDWEST RECOVERY SYSTEMS, LLC; and CONSUMER ADJUSTMENT COMPANY, INC.,<br><br>          Defendants. | Case No.: _____<br><br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT FOR FCRA AND CCRAA VIOLATIONS**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiffs, Elettra Meeks, Joseph Delacruz, Stephanie Laguna, Amber Leonard, and Becky Witt (collectively "Plaintiffs"), *individually and on behalf of others similarly situated,* by Counsel, hereby file this action against Defendants Experian Information Solutions, Inc. ("Experian"), Midwest Recovery Systems, LLC ("Midwest Recovery"), and Consumer Adjustment Company, LLC ("CACI"). In support thereof, Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

1.     This action arises from Defendants' reporting of adverse, outdated, and inaccurate information in Plaintiffs' credit reports related to illegal "tribal" payday

loans. Even though these loans were terminated as part of a nationwide class action and then settlement and in order to still coerce some payment, debt buyers Midwest Recovery and CACI continued to report them to Experian, which continued to report them to the world in the credit reports it furnished.

2.     In addition, Midwest Recovery deceptively "re-aged" the debt, which is a common practice where a creditor or debt collector alters the "date of delinquency" to make it falsely appear that a debt is new and, thus, avoid removal of the debt from consumers' credit reports.

3.     The Federal Trade Commission recently initiated an action against Midwest Recovery for placing "bogus or highly questionable debts onto consumers' credit reports to coerce them to pay the debts."[1] In its complaint, the FTC alleged that "Midwest Recovery collected more than $24 million from consumers" on these bogus debts, largely by coercing consumers through the negative impacts on their credit reports. *Id*. As the Director of the FTC's Bureau of Consumer Protection explained: Midwest Recovery and its owners "parked fake debt or questionable debts on people's credit reports and then waited for them to notice the damage when they were trying to get a loan or a job" in order to "coerce people to pay debts they didn't owe or didn't recognize." *Id*.

4.     Congress enacted the Fair Credit Reporting Act to prevent this type of misconduct. Finding that consumer reporting agencies "have assumed a vital role" in society, Congress sought to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(b).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA. Absent several narrow exceptions, § 1681c

---

[1] *Press Release*, Fed. Tr. Comm'n, *FTC Stops Debt Collector's Alleged "Debt Parking" Scheme, Requires it to Delete Debts it Placed on Consumers' Credit Reports* (Nov. 30, 2020), available at: https://www.ftc.gov/news-events/press-releases/2020/11/ftc-stops-debt-collectors-alleged-debt-parking-scheme-requires-it.

prohibits consumer reporting agencies from reporting adverse information that antedates the report by more than seven years. This section of the FCRA "reflects a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Beseke v. Equifax Info. Servs. LLC*, No. CV 17-4971 (DWF/KMM), 2019 WL 6250756, at *3 (D. Minn. Nov. 22, 2019) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014)). To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

6.     Here, Experian disregarded these requirements. It allowed Midwest Recovery to report adverse and outdated information regarding Plaintiffs' accounts, which were more than seven years old. Experian violated § 1681c because it allowed Midwest Recovery to re-age this adverse information—missed payments, past due amounts, and delinquent payment histories—that should have been removed from Plaintiffs' credit reports within seven years as required by the FCRA. If Experian had reasonable procedures as required by § 1681e(a), it would have discovered that Midwest Recovery was placing these "bogus or highly questionable debts onto consumers' credit reports to coerce them to pay the debts."[2]

7.     In addition, Experian never should have allowed Midwest Recovery or CACI to report the debts in the first place because they were cancelled as a result of a nationwide class settlement.[3] Experian nonetheless allowed debt collectors, such as Midwest Recovery and CACI, to inaccurately report that consumers had outstanding balances on loans after the announcement of a nationwide class action settlement.  It

---

[2] *Press Release*, *supra* n.1.

[3] *See generally Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.), Dec. 13, 2019 Order at Dkt. 141 (granting final approval of the class settlement); *see also* David Rees, *Historic settlement sees online lenders wiping out $380 million in debt. Virginians led the way*, The Virginian Pilot, available at https://www.pilotonline.com/business/consumer/dp-nw-online-lender-settlement-20191212-n7khtxn7tbbsbauzirehwmpgly-story.html.

did so, despite suffering an on-point loss before the Ninth Circuit for the exact same misconduct: continuing to report tribal loans purchased by a debt buyer even after litigation of the legality of such loans had been resolved. *See Reyes v. Experian Info. Sols., Inc.*, 773 F. App'x 882 (9th Cir. 2019).

8.     The class action settlement placed Experian on notice that the loans were, at a minimum, illegal and had been cancelled. Experian should have maintained reasonable procedures to ensure that it did not include any information pertaining to these loans in Plaintiffs' or the class members' reports. Indeed, several of the Plaintiffs disputed the accounts with Experian, explaining that the debt was void and had been the subject of a class action settlement involving Think Finance, Great Plains, Plain Green, and MobiLoans. Although Experian deleted the accounts in response to these disputes—a concession of the accuracy of the disputes—it nonetheless continued to report the same inaccurate information regarding other consumers as evidenced by the reports of the other Named Plaintiffs.

9.     The reporting of these debts violated § 1681e(b) of the FCRA, which requires consumer reporting agencies to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). With respect to California consumers, Experian's conduct also violated California's Consumer Credit Reporting Agencies Act ("CCRAA"), which imposes similar obligations on consumer reporting agencies. *See* Cal. Civ. Code Ann. § 1785.14(b).

10.     Midwest Recovery and CACI's conduct violated multiple provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, including its prohibition against the communication of "credit information which is known or which should be known to be false." *Id*. § 1692e(8). Their conduct also violated provisions of California's Rosenthal Fair Debt Collection Practices Act.

11.     Lastly, Midwest and CACI violated the CCRAA, which prohibits the furnishing of information to a consumer reporting agency if the person furnishing the

information "knows or should know the information is incomplete or inaccurate." CAL. CIV. CODE ANN. § 1785.25(a).

JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k(d). The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as Plaintiff Meeks is a resident of this Division, and Experian has its principal place of business in California.

PARTIES

14. Plaintiff Elettra Meeks ("Ms. Meeks") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). Ms. Meeks resides in Antioch, California.

15. Plaintiff Joseph Delacruz ("Mr. Delacruz") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). Mr. Delacruz resides in Corona, California.

16. Plaintiff Stephanie Laguna ("Ms. Laguna") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). Ms. Laguna resides in Kansas City, Missouri.

17. Plaintiff Amber Leonard ("Ms. Leonard") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). Ms. Leonard resides in Rochester, New York.

18. Plaintiff Becky Witt ("Ms. Witt") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). Ms. Witt resides in Houston, Texas.

19. Defendant Experian Information Solutions, Inc. is a corporation with a principal place of business in Costa Mesa, California. At all times relevant to this complaint, it was a "consumer reporting agency" as defined by the FCRA at 15 U.S.C. § 1681a(f).

5

20. Defendant Midwest Recovery Systems, LLC ("Midwest Recovery") is a limited liability company with a principal place of business in Earth City, Missouri. At all times relevant to this complaint, Midwest Recovery was a "debt collector" as defined by the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692; Cal. Civil Code § 1788.2(b).

21. Defendant Consumer Adjustment Company, Inc. ("CACI") is a corporation with a principal place of business in St. Louis, Missouri. At all times relevant to this complaint, CACI was a "debt collector" as defined by the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692; Cal. Civ. Code Ann. § 1788.2(b).

FACTUAL ALLEGATIONS

**A.    The FCRA protects consumers from outdated and inaccurate information.**

22. Congress enacted the FCRA with the express purpose of ensuring that consumer reporting agencies "exercise their grave responsibilities" in "a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization" of credit information. 15 U.S.C. § 1681(a)(4), (b).

23. Although many of the FCRA's provisions focus on accuracy, the FCRA also "aims to protect consumer information by limiting reporting periods for certain types of information to ensure only current and relevant information is disclosed." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1186 (9th Cir. 2019).

24. The FCRA's relevancy requirements, primarily located in § 1681c, accomplish Congress' overarching goal of providing consumers with an opportunity to improve their credit over time. *See* S. Rep. No. 91-517 (1969).

25. Section 1681c prohibits consumer reporting agencies ("CRAs") from furnishing reports containing outdated and stale information. This section prohibits CRAs from including eight categories of information in a consumer report.

1   26.   Relevant here, § 1681c(a)(4) prohibits a CRA from reporting accounts

2   "placed for collection or charged to profit and loss which antedate the report by more

3   than seven years." 15 U.S.C. § 1681c(a)(4).

4   27.   Similarly, § 1681c(a)(5) is a catchall provision that prohibits the

5   reporting "[a]ny other adverse item of information, other than records of convictions

6   of crimes which antedates the report by more than seven years." 15 U.S.C. §

7   1681c(a)(5).

8   28.   To further strengthen the protections of § 1681c, the FCRA also requires

9   consumer reporting agencies to "maintain reasonable procedures designed to avoid

10  violations" of § 1681c. 15 U.S.C. § 1681e(a).

11  29.   In addition to these provisions, the FCRA sets out requirements and

12  obligations for consumer reporting and requires that all consumer reports be

13  furnished using "reasonable procedures to assure maximum possible accuracy." 15

14  U.S.C. § 1681e(b).

15  30.   Section 1681e(b) imposes a high, and often disregarded, standard on

16  consumer reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, No. 1:10-

17  cv-1064(AJT/TRJ), 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking

18  down the requirements of § 1681e(b), and explaining that "'assure' means 'to make

19  sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity

20  or highest degree attainable[,]' and 'possible' means something 'falling within the

21  bounds of what may be done, occur or be conceived'") (quoting *Webster's Third New

22  Int'l Dictionary* 133, 1396, 1771 (1993)).

23  **B.   Experian allows debt collectors such as Midwest Recovery to deceptively
    "re-age" debts as a means of coercing consumers to make payments.**
24

25  31.   Because collection accounts are purged from credit reports after seven

26  years, creditors and debt collectors often attempt to "re-age" a debt to make it appear

27  as a newer debt, thereby preventing the aging-off of the debt from the consumer's

28  report. *Born-Again Debt: What Is Re-Aging, and Is It Legal?* (Nov. 13, 2019)

7

(explaining that "[r]e-aging occurs when the "purge from" date on a derogatory account is changed to be more current than the date of the original default, resulting in the account hanging around on your credit reports longer than allowed under the law").

32.    "Not only does the re-aging cause the negative credit report entry to remain on" the consumer's credit report longer than permitted by the FCRA, but it also "will most likely have an unfairly negative impact" on the consumer's credit score because "the item will be interpreted as being more recent and not in the distant past." *Id*.

33.    This improper continued reporting of debts unfairly, and by design, pressures consumers into paying debts so that they will stop appearing on their credit, dragging down their credit scores.

34.    To re-age a debt, creditors or debt collectors typically change the "date of first delinquency" information, which is one of the standard data entry fields on all credit reports with the "Big 3" consumer reporting agencies.

35.    Upon information and belief, Experian has a procedure to suppress the reporting of this information when the date in the "date of 1st delinquency" field antedates the report by more than seven years. In other words, if a creditor requested a copy of a consumer's credit report more than 7.5 years from the "date of 1st delinquency," Experian's procedures would automatically block the inclusion of the account.

36.    To prevent the suppression of the credit information, a creditor or debt collector simply needs to change the date in the "date of 1st delinquency" field to make that event appear newer.

37.    Upon information and belief and as reflected by Plaintiffs' circumstances, Experian allows furnishers to select and/or change the date of first delinquency field without providing any explanation or justification for the initial entry or change.

38.     Additionally, upon information and belief, Experian does not have any policy, practice, or procedure to ensure that it detects when a furnisher re-ages a debt even though Experian knows that it is a prevalent practice from creditors and debt collectors to re-age debts to keep these adverse items on consumers' reports.

39.     Experian also knew or should have known that Midwest Recovery was an unreliable source of information and that it placed "bogus or highly questionable debts onto consumers' credit reports to coerce them to pay the debts."[4]

40.     By way of example, the Consumer Financial Protection Bureau's website shows that more than 200 consumers have lodged complaints against Midwest Recovery related to "credit reporting" and 800 complaints related to "debt collection."

41.     These complaints demonstrate that Midwest is an unreliable source of data, including more than 20 specific complaints indicating that "[o]ld information reappears or never goes away."

42.     For example, on June 13, 2018, one consumer filed a complaint indicating that Midwest Recovery was "reporting old debts" and "re-aging them and placing them on my credit report."

43.     Similarly, another consumer complained on July 19, 2020, that Midwest Recovery "has placed this in my credit report several times even though the original debt is over 7 years old and it was disputed and removed from my credit report over 2 years ago!"

44.     On May 29, 2020, another consumer similar complained that "Midwest Recovery Systems has illegally placed this account . . . on my credit reports by using fraudulent, illegal and unfair debt collection practices such as negative re-aging of debt, breaking the statute of limitations in the State of Michigan, communicating false credit information and failing to disclose that I have disputed this debt on several occasions."

---

[4] *Press Release, supra* n.1.

45. Upon information and belief, many consumers have also sent similar disputes directly to Experian about Midwest Recovery's re-aging of the debts.

46. Despite these complaints, Experian continued to allow Midwest Recovery to report information to it and, upon information and belief, without establishing reasonable procedures to ensure that Midwest Recovery was providing accurate information to Experian.

## C. Experian allowed Midwest Recovery and CACI to use false and deceptive credit reporting in an effort to force consumers to make payments on invalid and cancelled debts.

47. The loans at issue in this case arise from a rent-a-tribe enterprise that was established to evade state usury laws.

48. For close to eight years, Think Finance operated a rent-a-tribe scheme, which sought to evade the usury laws of certain states by using the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi Tribe as the conduit for its illegal loans.

49. Even though regulatory enforcement efforts and private lawsuits uncovered their misconduct as early as August 2013, Think Finance and others continued to engage in the scheme even though "[n]o one appear[ed] to seriously dispute" that these rent-a-tribe "loans violated a host of state and federal lending laws." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016).

50. Under the tribal lending model, loans were made in the name of Plain Green, Great Plains, and Mobiloans—three entities formed under tribal law to serve as the fronts to disguise Think Finance's role and to ostensibly shield the scheme by exploiting tribal sovereign immunity. In return for the use of their name, the tribal companies received a nominal flat fee of the revenue from the loans, but they otherwise had no control over the income, expenses, or day-to-day operations of the businesses.

51. Experian should not have allowed Midwest Recovery or CACI to report the debts after the nationwide class settlement, which was approved on December 13,

2019. *See Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.), Dec. 13, 2019 Order at Dkt. 141 (granting final approval of the class settlement).

52.     Extensive litigation against Think Finance and the tribal lenders further placed Experian on notice about the unenforceability of these debts. As early as August 2013, the New York Department of Financial Services ("DFS") issued a cease and desist letter to 35 online lending companies, including Great Plains.[5] The cease and desist was issued after an "extensive" investigation "uncovered that those companies were offering payday loans to consumers over the Internet in violation of New York law, including some loans with annual interest rates as high as 1,095 percent." *Id.*

53.     In response, two tribal lending businesses sought declaratory relief and a preliminary injunction that tribal businesses were inherently sovereign nations and not subject to New York law. *See Otoe-Missouria Tribe of Indians v. N.Y. State Dept. of Fin. Servs.*, 974 F. Supp. 2d 353, 361 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).

54.     On September 30, 2013, the district court denied the tribal plaintiff's request for a preliminary injunction, finding that the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands," and thus, the loans were "subject to the State's non-discriminatory anti-usury laws." 974 F. Supp. 2d at 361.

55.     The court reasoned, "There is simply no basis . . . that the Tribes are treated differently from any other individuals or entities that enter New York to lend to New York residents." *Id.*

56.     Over the next six years, dozens of cases—including enforcement actions filed by the Attorney General for Pennsylvania and the Consumer Financial

---

[5] The Official Website of New York State, Press Room, *Cuomo Administration Demands 35 Companies Cease and Desist Offering Illegal Online Payday Loans That Harm New York Consumers* (Aug. 6, 2013), *available at* https://www.governor.ny.gov/news/cuomo-administration-demands-35-companies-cease-and-desist-offering-illegal-online-payday-loans.

Protection Bureau—established that these loans violated state and federal laws. *See generally Commonwealth of Pa. v. Think Finance, Inc.*, Case No. 141101359 (removed to federal court and docketed on Dec. 17, 2014); *CFPB v. Think Finance, LLC*, Case No. 4:27-cv-00127-BMM (D. Mon.) (filed on April 24, 2018); *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.).[6]

57.     As a result of this litigation, the various constituencies involved in the litigation entered into a groundbreaking nationwide class settlement, which cancelled the debt. *See generally Gibbs v. Plain Green, LLC*, No. 3:17-cv-495 (E.D. Va.), Final Settlement Agreement at Dkt. 114-1.

58.     Despite the settlement, Experian nonetheless allowed debt collectors, such as Midwest Recovery and CACi, to inaccurately report that consumers had outstanding balances on loans originated in the name of Plain Green, Great Plains, and MobiLoans.

59.     This conduct violated the high standard imposed by the FCRA, which required Experian to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

60.     Further, Experian was on direct notice of the illegality of its failures, as just in May 2019, the Ninth Circuit considered an identical case, *Reyes*, and reversed a decision for Experian and ordered summary judgment in favor of the consumer over the issue of reporting such invalid debt. 773 F. App'x at 885 (9th Cir. 2019).

---

[6] *See also Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 337 (4th Cir. 2017) ("We conclude that the Great Plains Agreement contains unenforceable choice of law provisions, which are not severable from the broader arbitration agreement and render the entire arbitration agreement unenforceable."); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 971 (N.D. Cal. 2019) (holding that the choice-of-law provisions in Plain Green and Great Plains' loan contracts were unenforceable); *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901, 907 (E.D. Va. 2019) (same), *aff'd*, 967 F.3d 332 (4th Cir. 2020); *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 308 (E.D. Va. 2019) (same), *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020); *Commonwealth of Pennsylvania v. Think Fin., Inc.*, No. 14-CV-7139, 2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016) (denying a motion to dismiss).

**D.    Defendants' conduct injured Plaintiffs.**

61.    Within the past two years, Midwest Recovery reported adverse information to Experian about Ms. Meeks. In particular, Midwest Recovery claimed that Ms. Meeks was seriously past due on a loan originated by MobiLoans, including a past due amount of $1,362.

62.    After Ms. Meeks disputed the account, Experian temporarily removed the information from her credit report, but it allowed the same information to be reported by CACI, including the past due balance information.

63.    This information should not have appeared in Ms. Meeks' credit reports after the nationwide class settlement.

64.    Midwest and CACI both knew or had reason to know that the information they were providing about Ms. Meeks to Experian was inaccurate and incomplete.

65.    Within the past two years, CACI reported adverse information to Experian about Mr. Delacruz. In particular, CACI claimed that Mr. Delacruz was seriously past due on a loan originated by MobiLoans, including a past due amount of $1,075.

66.    This information should not have appeared in Mr. Delacruz's credit reports after the nationwide class settlement.

67.    Midwest and CACI both knew or had reason to know that the information they were providing about Mr. Delacruz to Experian was inaccurate and incomplete.

68.    Within the past two years, Midwest Recovery reported adverse information to Experian about Ms. Laguna.

69.    For example, when Ms. Laguna applied for a mortgage on June 4, 2020, Experian reported a collection account with Midwest Recovery that was seriously past due on a loan originated by Great Plains, including a past due amount of $1,105.

70. This information should not have appeared in Ms. Laguna's credit reports because she stopped paying the illegal loan in 2011; and it was charged off in May 2012. Because Ms. Laguna did not make any payments on the loan after 2011, the adverse information should not have been reported in her credit reports after seven and a half years.

71. Upon information and belief, Midwest Recovery re-aged the debt to keep the account on Ms. Laguna's credit report for a longer period of time and to coerce her into paying the amount outstanding on the loan.

72. Moreover, this information should not have appeared in Ms. Laguna's credit reports after the nationwide class settlement.

73. On or around July 30, 2020, Ms. Laguna disputed the debt with Experian, explaining that the debt was void and had been the subject of a class action settlement.

74. Although Experian deleted the account from Ms. Laguna's file—a concession of the accuracy of her dispute—it nonetheless continued to report the same inaccurate information regarding other consumers as evidenced by the reports of the other named Plaintiffs.

75. Midwest and CACI both knew or had reason to know that the information they were providing about Ms. Laguna to Experian was inaccurate and incomplete.

76. Within the past two years, Midwest Recovery reported adverse information to Experian about Ms. Leonard.

77. For example, when Ms. Leonard applied for credit with American Express and Ikea, Experian reported a collection account with Midwest Recovery that was seriously past due on a loan originated by Great Plains, including a past due amount of $1,572.

78. This information should not have appeared in Ms. Leonard's credit reports because she stopped paying the illegal loan by April 2012 (at the latest); and

it was charged off in September 2012. Because Ms. Leonard did not make any payments on the loan after April 2012, the adverse information should not have been reported in her credit reports after seven and a half years, including when she applied for credit in August 2020.

79.     Upon information and belief, Midwest Recovery re-aged the debt to keep the account on Ms. Leonard's credit report for a longer period of time and to coerce her into paying the amount outstanding on the loan.

80.     Moreover, this information should not have appeared in Ms. Leonard's credit reports after the nationwide class settlement.

81.     On or around July 30, 2020, Ms. Leonard disputed the debt with Experian, explaining that the debt was void and had been the subject of a class action settlement.

82.     Although Experian deleted the account from Ms. Leonard's file—a concession of the accuracy of her dispute—it nonetheless continued to report the same inaccurate information regarding other consumers as evidenced by the reports of the other named Plaintiffs.

83.     Midwest and CACI both knew or had reason to know that the information they were providing about Ms. Leonard to Experian was inaccurate and incomplete.

84.     Within the past two years, Midwest Recovery reported adverse information to Experian about Ms. Witt.

85.     For example, when Ms. Witt applied for a credit card in June 2020, Experian reported a collection account with Midwest Recovery that was seriously past due on a loan originated by Great Plains, including a past due amount more than $1,500.

86.     This information should not have appeared in Ms. Witt's credit reports because she stopped paying the illegal loan in 2012; and it was charged off in November 2012. Because Ms. Laguna did not make any payments on the loan after

2012, the adverse information should not have been reported in her credit reports after seven and a half years.

87.   Upon information and belief, Midwest Recovery re-aged the debt to keep the account on Ms. Witt's credit report for a longer period of time and to coerce her into paying the amount outstanding on the loan.

88.   Moreover, this information should not have appeared in Ms. Witt's credit reports after the nationwide class settlement.

89.   Midwest and CACI both knew or had reason to know that the information they were providing about Ms. Witt to Experian was inaccurate and incomplete.

**CLASS ALLEGATIONS**

90.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as the "**Experian Class**":

> All persons located in the United States (1) for whom Experian furnished a consumer report; (2) within the two years prior to the filing of this action and during its pendency; (3) containing an account with Midwest Recovery; (4) where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans.

> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> All Plaintiffs are members of the Experian Class.

91.   Plaintiffs also bring this action on behalf of a subclass of the Experian Class, (the "**Experian California Subclass**"):

> All persons located in California (1) for whom Experian furnished a consumer report; (2) within the two years prior to the filing of this action and during its pendency; (3) containing an account with Midwest Recovery; (4) where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans.

> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiffs Meeks and Delacruz are members of the Experian California Subclass.

92. Plaintiffs also bring this action on behalf of a sub-class of the Experian Class, (the "**Experian Obsolete Subclass**"):

> All persons located in the United States (1) for whom Experian furnished a consumer report; (2) within the two years prior to the filing of this action and during its pendency; (3) containing an account with Midwest Recovery; (4) where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; and (5) where the consumer's delinquency commenced more than seven and a half years before the date of the report.

> Excluded from the sub-class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiffs Laguna, Leonard, and Witt are members of the 1681c Subclass.

93. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as the "**Midwest Class**":

> All persons located in the United States (1) who Midwest contacted in an attempt to collect a debt or communicated credit information about to Experian, Equifax, or Trans Union; (2) arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; within one year prior to the filing of this action.

> Excluded from the sub-class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiffs Meeks, Laguna, Leonard, and Witt are members of the Midwest Class.

94. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as the "**Midwest California SubClass**":

> All persons located in California (1) for whom Midwest contacted in an attempt to collect a debt or communicated credit information about to Experian, Equifax, or Trans Union; (2) arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; (3) within one year prior to the filing of this action.

> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiff Meeks is a members of this class.

95.     Plaintiffs also bring this action on behalf of a sub-class of the Experian Class, (the "**Midwest California Reporting Subclass**"):

> All persons located in California (1) about whom Midwest reported to Equifax, Experian, or Trans Union, a loan with either Plain Green, Great Plains, or Mobiloans; (2) as having a balance due, owing, or past due.

> Excluded from the sub-class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiff Meeks is a member of this class.

96.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as the "**CACI Class**":

> All persons located in the United States (1) for whom CACI contacted in an attempt to collect a debt or communicated credit information about to Experian, Equifax, or Trans Union; (2) arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; (3) within one year prior to the filing of this action.

> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiffs Meeks and Delacruz are members of this class.

97.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as the "**CACI California Sub-Class**":

> All persons located in California (1) for whom CACI contacted in an attempt to collect a debt or communicated credit information about to Experian, Equifax, or Trans Union; (2) arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; (3) within one year prior to the filing of this action.

> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

> Plaintiffs Meeks and Delacruz are members of this class.

98.     Plaintiffs also bring this action on behalf of a sub-class of the Experian Class, (the "**CACI California Reporting Subclass**"):

All persons located in California (1) about whom CACI reported to Equifax, Experian, or Trans Union, a loan with either Plain Green, Great Plains, or Mobiloans; (2) as having a balance due, owing, or past due.

Excluded from the sub-class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

Plaintiffs Meeks and Delacruz are members of this class.

99. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that each class and each sub-class alleged herein is so numerous that joinder of all their claims is impractical. The class members' names and addresses are identifiable through Midwest Recovery and Experian's internal business records, as well as the records of Plain Green, Great Plains, and MobiLoans, and they may be notified of the pendency of this action by published and/or mailed notice.

100. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Defendants' conduct violated the FCRA or state law; (2) whether such conduct was willful or negligent; and (3) the appropriate amount of damages to be awarded to each consumer.

101. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class and sub-class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

102. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative classes and sub-classes because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intend, with their counsel, to continue to prosecute the action

vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their vigorous pursuit of this action.

103. **<u>Superiority</u>. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

**CLAIMS FOR RELIEF**

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(Class Claim against Experian)**

104. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

105. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the Experian Class.

106. As described above, Experian violated § 1681e(b) of the FCRA by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

107.    Plaintiffs and each putative class member suffered real and actual harm and injury.

108.    For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Experian's files and reports.

109.    In each instance, each class member's credit report contained derogatory information that Experian would have removed had it followed reasonable procedures to assure the maximum possible accuracy in the preparation of its credit reports.

110.    Experian's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

111.    As a result of these FCRA violations, Experian is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681c(a)**
**(Class Claim against Experian)**

112.    Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

113.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the Experian Obsolete Sub-Class.

114.    As described above, Experian reported adverse account information that antedated the report by more than seven years.

115.    Experian violated § 1681c of the FCRA as to Plaintiffs Laguna, Leonard, and Witt and each of the class members by adverse account information that antedated the report by more than seven years.

116. Plaintiffs and each putative class member suffered real and actual harm and injury.

117. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Experian's files and reports.

118. In each instance, each class member's credit report contained derogatory information that Experian was legally obligated to remove.

119. Experian's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

120. As a result of these FCRA violations, Experian is liable for statutory damages from $100 to $1,000 for each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(a)
### (Class Claim against Experian)

121. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

122. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of the Experian Obsolete Sub-Class

123. As described above, Experian reported adverse account information that antedated the report by more than seven years.

124. Experian violated § 1681e(a) by failing to maintain any procedure to prevent Midwest Recovery and CACI from altering the information provided in the date of first delinquency field.

125. Upon information and belief, Experian allows furnishers to systematically change the date of first delinquency field without providing any explanation or justification for the change.

126. Additionally, upon information and belief, Experian does not have any policy, practice, or procedure to ensure that it detects when a furnisher re-ages a debt even though Experian knows that it is a prevalent practice from creditors and debt collectors to re-age debts to keep these adverse items on consumers' reports.

127. Plaintiffs and each putative class member suffered real and actual harm and injury.

128. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Experian's files and reports.

129. In each instance, each class member's credit report contained derogatory information that Experian was legally obligated to remove.

130. Experian's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

131. As a result of these FCRA violations, Experian is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR:
### VIOLATION OF CCRAA, Cal. Civ. Code § 1785.14(b)
**(Class Claim against Experian)**

132. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

133. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of the Experian California Sub-Class.

134. As described above, Experian violated § 1785.14(b) of the CCRAA by reporting loan information arising from debts with Plain Green, Great Plains, and MobiLoans after the nationwide settlement in December 2019.

1     135.   Plaintiffs and each putative class member suffered real and actual harm
2    and injury.

3     136.   Experian's conduct was willful, rendering it liable for actual and
4    punitive damages in an amount to be determined by the Court pursuant to §
5    1785.31(a)(2) of the CCRAA. In the alternative, the violation was negligent,
6    rendering Experian liable under § 1785.31(a)(1) of the CCRAA.

7     137.   In addition, Plaintiffs and class members are entitled to injunctive relief
8    pursuant to § 1785.31(b) of the CCRAA. On behalf of themselves and other
9    consumers in California, Plaintiffs seek an order from the Court prohibiting Experian
10   from continuing to report any loan information arising from debts with Plain Green,
11   Great Plains, and MobiLoans and requiring them to send notice to class members
12   indicating that they will no longer report this information.

13                              **COUNT FIVE:**
                    **VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
14              **(Class Claim against Midwest Recovery and CACI)**

15    138.   Plaintiffs incorporate by reference each of the allegations set forth in the
16   preceding paragraphs.

17    139.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs
18   bring this claim on behalf of the Midwest Class and the CACI Class.

19    140.   Midwest Recovery and CACI violated §§ 1692e(2) and 1692e(10) of the
20   FDCPA by attempting to collect debts from Plaintiffs and class members on loans
21   arising from a debt where the original creditor of the loan was either Plain Green,
22   Great Plains, or MobiLoans.

23    141.   Midwest Recovery and CACI also § 1692e(8) of the FDCPA by falsely
24   representing in their credit reporting to Equifax, Experian, and Trans Union that the
25   Plaintiffs and putative class members owed an outstanding balance on debts with
26   Plain Green, Great Plains, or MobiLoans.

27

28

142. Midwest Recovery and CACI also violated § 1692e(8) of the FDCPA by re-aging information related to Plaintiffs' and class members' debts as alleged above.

143. Upon information and belief, Plaintiffs allege that, as a standard practice, Midwest Recovery and CACI reported this false information about consumers to the credit reporting agency as a means to force consumers to pay these invalid loans.

144. Upon information and belief, Midwest Recovery's and CACI's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

145. Plaintiffs and the putative class members suffered actual damages as a result of Midwest Recovery's and CACI's violations of § 1692e.

146. Based on Midwest Recovery's and CACI's noncompliance with § 1692e, Plaintiffs seek, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT SIX:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692f
### (Class Claim against Midwest Recovery and CACI)

147. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

148. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim on behalf of the Midwest Class and the CACI Class.

149. Midwest Recovery and CACI violated § 1692f(1) of the FDCPA by unfairly attempting and collecting debts from Plaintiffs and class members on loans arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans.

150. Midwest Recovery and CACI also § 1692f(1) of the FDCPA by re-aging information related to Plaintiffs' and class members' debts as alleged above.

151. Upon information and belief, Plaintiffs allege that, as a standard practice, Midwest Recovery and CACI reported this false information about consumers to the credit reporting agency as a means to force consumers to pay these invalid loans to avoid damage to their credit ratings.

152. Upon information and belief, Midwest Recovery's and CACI's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

153. Plaintiffs and the putative class members suffered actual damages as a result of Midwest Recovery's and CACI's violations of § 1692f.

154. Based on Midwest Recovery's and CACI's noncompliance with § 1692f, Plaintiffs seek, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT NINE:**
**VIOLATION OF ROSENTHAL FAIR DEBT**
**COLLECTIONS PRACTICES ACT**
**(Class Claim against Midwest Recovery and CACI)**

155. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

156. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of the Midwest California Sub-Class and the CACI California Sub-Class.

157. Midwest Recovery and CACI violated § 1788.17 of the Rosenthal Fair Debt Collection Practices Act by unfairly attempting and collecting debts from Plaintiffs and class members on loans arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans.

158. Midwest Recovery and CACI violated § 1788.17 of the Rosenthal Fair Debt Collection Practices Act further violated § 1788.17 of the Rosenthal Fair Debt Collection Practices Act by communicating information related to Plaintiffs' and class members' debts to the credit reporting agencies.

159.   Upon information and belief, as a standard practice, Midwest Recovery reported this false information about consumers to the credit reporting agency as a means to force consumers to pay these invalid loans so that their credit ratings would not suffer as a result of the outstanding collection account being reported about them.

160.   Upon information and belief, Midwest Recovery's and CACI's conduct is a part of a broader practice of frequent and persistent noncompliance with California's debt collection laws.

161.   Plaintiffs and the putative class members suffered actual damages as a result of Midwest Recovery's and CACI's violations.

162.   Based on Midwest Recovery's and CACI's noncompliance, Plaintiff Meeks seeks, individually and on behalf of the class, actual damages, punitive damages, reasonable attorneys' fees, and costs, pursuant to CAL. CIV. CODE § 1788.30.

## COUNT ELEVEN:
## VIOLATION OF CCRAA
### (Class Claim against Midwest Recovery and CACI)

163.   Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

164.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of the Midwest California Reporting Sub-class and the CACI California Reporting Sub-Class.

165.   Midwest Recovery and CACI violated § 1785.25(a) of the CCRAA by reporting to CRAs information about debts from Plaintiffs and class members on loans arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans.

166.   Midwest Recovery and CACI knew or should have known that such debts were extinguished by the class action settlement involving Plain Green, Great Plains, and Mobiloans, yet it continued to report such debts as due and owing.

167.    Upon information and belief, as a standard practice, Midwest Recovery and CACI reported this false information about consumers to the credit reporting agency as a means to force consumers to pay these invalid loans so that their credit ratings would not suffer as a result of the outstanding collection account being reported about them.

168.    Upon information and belief, Midwest Recovery's and CACI's conduct is a part of a broader practice of frequent and persistent noncompliance with California's credit reporting laws.

169.    Plaintiffs and the putative class members suffered actual damages as a result of Midwest Recovery's and CACI's violations.

170.    Based on Midwest Recovery's and CACI's noncompliance, Plaintiffs seek, individually and on behalf of the class, actual damages, punitive damages, reasonable attorneys' fees, and costs, pursuant to Cal. Civ. Code § 1785.31.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendants for: (1) certification of this matter to proceed as a class action under Rule 23; (2) actual, statutory, and/or punitive damages as pled above; (3) injunctive relief as requested above; (4) attorneys' litigation expenses and costs of suit; and (5) such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**PLAINTIFFS**

By: */s/ Craig C. Marchiando*
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

*Attorney for Plaintiffs*